**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                   :
                                               :
          Plaintiff,                           :   Civil Action No. 23-cv-3832
                                               :
v.                                             :   **COMPLAINT FOR VIOLATIONS OF**
                                               :   **SECTIONS 14(a) AND 20(a) OF THE**
HESKA CORPORATION, ROBERT L.                   :   **SECURITIES EXCHANGE ACT OF**
ANTIN, STEPHEN L. DAVIS, MARK                  :   **1934**
FURLONG, DR. JOACHIM HASENMAIER,               :
SCOTT HUMPHREY, SHARON J.                      :   **JURY TRIAL DEMANDED**
LARSON, DAVID E. SVEEN, PH.D., and             :
KEVIN S. WILSON,                               :
                                               :
          Defendants.                          :
--------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Heska Corporation ("Heska or the

"Company") and the members Heska's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Heska by affiliates of Mars, Inc. ("Mars").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 28, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Helsinki Merger Sub LLC ("Merger Sub"), a wholly-owned subsidiary of Antech Diagnostics, Inc. (the "Acquiror") will merge with and into Heska, with Heska surviving as a wholly-owned subsidiary of the Acquiror (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 9, 2023 (the "Merger Agreement"), each Heska stockholder will receive $120.00 in cash (the "Merger Consideration") for each Heska share owned. Acquiror is a wholly-owned subsidiary of Mars and a part of Mars Petcare Science and Diagnostics.

3.      As discussed below, Defendants have asked Heska's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and Piper Sandler & Co. ("Piper Sandler") in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Heska's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Heska stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Robert L. Antin has served as a member of the Board since November 2020.

11.     Individual Defendant Stephen L. Davis has served as a member of the Board since August 2020.

12.     Individual Defendant Mark Furlong has served as a member of the Board since March 2019.

13.     Individual Defendant Joachim A. Hasenmaier has served as a member of the Board since January 2021.

14.     Individual Defendant Scott Humphrey has served as a member of the Board since March 2022.

15.      Individual Defendant Sharon J. Larson has served as a member of the Board since July 2011.

16.     Individual Defendant David E. Sveen, Ph.D. has served as a member of the Board since November 2013.

17.     Individual Defendant Kevin S. Wilson has served as a member of the Board since March 2014 and is the Company's President and Chief Executive Officer.

18.     Defendant Heska is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 3760 Rocky Mountain Avenue, Loveland, Colorado 80538. The Company's stock trades on the NASDAQ Stock Market under the symbol "HSKA."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

21.     Heska manufactures and sells diagnostic and specialty products and solutions for veterinary practitioners in the United States, Canada, Mexico, Germany, Italy, Spain, France, Switzerland, Australia, and Malaysia. The Company offers Element DC, Element DCX, Element DC5x veterinary chemistry analyzers for blood chemistry and electrolyte analysis; Element RC, Element RCX, and Element RC3X chemistry systems for blood chemistry and electrolyte analysis; Element HT5 and scil Vet abc Plus veterinary hematology analyzers to measure blood cell, platelet count, and hemoglobin levels; Element POC blood gas and electrolyte analyzers; Element i

immunodiagnostic analyzers; and Element COAG and Element AIM veterinary analyzers. It also provides HeskaView Telecytology that provides in-clinic automated microscopic slide scanning and computing equipment; IV infusion pumps; digital radiography hardware and mobile digital radiography products; ultrasound systems; Cloudbank, a Web-based image storage solution; point-of-care products to detect antigens and antibodies associated with infectious and parasitic diseases of animals; Tri-Heart Plus chewable tablets for the treatment of canine heartworm infection, and ascarid and hookworm infections; and allergy products and services, including ALLERCEPT definitive allergen panels and therapy shots or drops. In addition, the Company provides a line of bovine vaccines; biological and pharmaceutical products to other animal health companies; turnkey services comprising research, licensing, production, labeling, and packaging; and validation support and distribution services. It sells its products to veterinarians through a telephone sales force and third-party distributors; and trade shows, print advertising, and other distribution relationships. The Company was formerly known as Paravax, Inc. and changed its name to Heska Corporation in 1995. The Company was incorporated in 1988 and is based in Loveland, Colorado.

22.     On April 3, 2023, Mars and the Company jointly announced the Proposed Transaction:

> MCLEAN,       Va. and LOVELAND,       Colo., April       3, 2023 /PRNewswire/ -- Mars, Incorporated ("Mars"), and Heska Corporation (NASDAQ: HSKA) ("Heska") today announced that they have entered into a definitive agreement under which Mars will acquire Heska, a global provider of advanced veterinary diagnostic and specialty products for $120.00 per share. The transaction price represents a premium of approximately 38% over Heska's 60-calendar day volume weighted average price and a premium of approximately 23% over Heska's closing stock price as of March 31, 2023. The agreement has been unanimously approved by the boards of directors of both companies. Upon transaction close, Heska will join Mars Petcare, a purpose-driven global business serving pets and

pet owners through products and services within veterinary health and diagnostics, nutrition, innovation, and technology. This acquisition will enable the Science & Diagnostics division of Mars Petcare to expand its diagnostic offerings and broadly promote point-of-care veterinary diagnostics to the global pet healthcare community.

**Nefertiti Greene, President, Mars Petcare, Science & Diagnostics**, said: "We look forward to welcoming Heska to Science & Diagnostics as we share the belief that diagnostic innovation is a critical enabler to providing transformative veterinary care." Greene added: "This transaction will bring together highly complementary businesses with a strong strategic and cultural fit that furthers our purpose to create A BETTER WORLD FOR PETS™. This comprehensive diagnostic offering will mean broader coverage across diagnostic products, services, and technology, and will accelerate R&D for novel solutions."

**Kevin Wilson, Chief Executive Officer & President, Heska**, commented: "Today's announcement is a great testament to the quality of our Heska family - we are small, but our people and their creativity, execution, expertise, and value-creation have made us exceptional. We are thrilled to join Mars Petcare on its quest to build A BETTER WORLD FOR PETS™. Working together, Heska's innovations will more quickly reach more veterinarians to help more pet families live better, healthier, longer lives. That's been our mission for over a decade and today is an incredible milestone towards realizing it."

\* \* \*

The transaction includes customary closing conditions, including Heska shareholders' and regulatory approvals, and is anticipated to close in the second half of 2023.

**Advisors**

Lazard served as the financial advisor for Mars, and Skadden, Arps, Slate, Meagher & Flom LLP acted as Mars' legal advisor.

BofA Securities, Inc. and Piper Sandler & Co. served as Heska's financial advisors, and Gibson, Dunn & Crutcher LLP acted as Heska's legal advisor.

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Heska's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

24.     On April 28, 2023, Heska filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by Heska management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Heska management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, EBIT, Tax-Effected EBIT and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

29.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analyses*

30.     With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each company selected by BofA for the analysis; and (ii) the inputs and assumptions underlying the range of EV/2023E Revenue and EV/2024E Revenue multiples of 2.15x to 5.00xand 2.05x to 4.50x, respectively, selected by BofA for the analysis.

31.     With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by BofA for the analysis, including the transaction values of the selected transaction, and the consideration paid or payable in the selected transaction, and as a multiple of the latest 12 months EBITDA of the target companies as of the announcement; and (ii) the inputs and assumptions underlying the range of last twelve months EBITDA multiples of 18.0x to 30.0x selected by BofA for the analysis.

32.     With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

perpetuity growth rate of 3.5% to 4.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 8.0% to 10.0%; and (iv) the weighted cost of capital of the Company.

33.     With respect to BofA's analysis of stock price targets, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading price targets for the shares of Heska common stock prepared and published by the research analysts.

34.     With respect to BofA's premia paid analysis, the Proxy Statement fails to disclose: (i) the all-cash mergers and acquisitions transactions and the premia paid in those transactions; and (ii) the inputs and assumptions underlying the premia reference range of 22% to 52%.

*Omissions and/or Material Misrepresentations Concerning Piper Sandler's Financial Analyses*

35.     With respect to Piper Sandler's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected by Piper Sandler for the analysis.

36.     With respect to Piper Sandler's *Selected M&A Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected by Piper Sandler for the analysis.

37.     With respect to Piper Sandler's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected terminal value for the Company at December 31, 2027; and (ii) the inputs and assumptions underlying the perpetuity growth rates between 3.5% to 4.5%.

38.     With respect to Piper Sandler's *Premia Paid Analysis*, the Proxy Statement fails to disclose the 14 selected transactions and the premia paid in those transactions.

39.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Heska within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Heska, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Heska, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Heska, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 8, 2023                     By:   **MELWANI & CHAN LLP**

*/s/ Gloria Kui Melwani*

Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*